IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| BROADCAST MUSIC, INC.; | : | |
| SONY/ATV SONGS LLC; THE | : | |
| BERNARD EDWARDS COMPANY LLC; | : | |
| RONDOR MUSIC INTERNATIONAL, | : | |
| INC. d/b/a IRVING MUSIC; EMI | : | |
| VIRGIN SONGS, INC.; THE END OF | : | |
| MUSIC; MOEBETOBLAME MUSIC; | : | |
| SONG OF UNIVERSAL, INC.; | : | |
| ESCATAWPA SONGS; SONY/ATV | : | |
| SONGS LLC d/b/a SONY/ATV TREE | : | |
| PUBLISHING; NASHVILLE STAR | : | |
| MUSIC, A DIVISION OF REVEILLE | : | |
| MUSIC PUBLISHING LLP; CARNIVAL | : | |
| MUSIC COMPANY d/b/a TILTAWHIRL | : | |
| MUSIC; | : | |
| | : | CASE NO. |
| Plaintiffs, | : | 5:13-CV-36 (CAR) |
| | : | |
| v. | : | |
| | : | |
| NORTHSIDE RIVARLY'S LLC d/b/a | : | |
| RIBALRY'S ON NORTHSIDE; and | : | |
| NICHOLAS E. SMITH, individually; | : | |
| | : | |
| Defendants. | : | |

## ORDER ON MOTION FOR DEFAULT JUDGMENT

Currently before the Court is Plaintiffs' Motion for Default Judgment [Doc. 9] against Defendant Northside Rivarly's, LLC d/b/a Rivalry's On Northside ("Rivalry's") seeking statutory damages for Rivalry's unlicensed public performance of six of Plaintiffs' musical compositions, in violation of United States Copyright Act of 1976, 17

1

U.S.C. § 101.  Having fully considered Plaintiffs' Motion, the Complaint, the submitted

evidence, and the relevant case law, the Court **GRANTS** Plaintiffs' Motion.

Accordingly, default judgment should be entered in favor of **PLAINTIFFS** and against

Rivarlry's, and appropriate relief is due to be awarded as discussed below.[1]

### FACTS

According to the facts alleged in the Complaint, Plaintiffs are copyright owners

of at least one of the songs in this case and have granted the right to license the public

performance rights to Broadcast Music, Inc. ("BMI").[2]  On behalf of all of its members,

BMI licenses the right to perform publically all of the songs in the BMI Repertoire,

including the songs at issue in this case.  At all relevant times, Plaintiffs owned the

copyrights for the six musical compositions involved in this case: "Good Times a/k/a

Rappers' Delight", "Joy to the World", "Lithium", "Other Side a/k/a Otherside",

"Kryptonite", and "Gun Powder and Lead".  Each Plaintiff in this action granted BMI a

license to authorize the non-dramatic, public performance of their copyrighted musical

compositions.[3]

Defendant Rivalry's is a limited liability company organized under the laws of

the State of Georgia, which operates and controls an establishment known as Rivalry's

---

[1] *See* Fed. R. Civ. P. 55(b).
[2] Compl. ¶¶ 5-15 [Doc. 1].
[3] Compl. ¶ 3 [Doc. 1].

On Northside (the "Establishment").[4]  Defendant Nicholas E. Smith, a member of the LLC, is responsible for the operation and management of the Establishment.[5]

According to the report of Howard Clay, the investigator employed by BMI, Clay visited the Establishment on the night of August 9, 2012, and using a battery powered digital recording device, recorded approximately four hours of music that was publically performed either by a live DJ or by karaoke inside the Establishment.[6]  Four days later, Clay submitted the digital audio recording to BMI's General Licensing Department via overnight carrier.[7]  Two of BMI's employees, Lisa Brammer and Christopher Lott, separately examined the audio recording and positively identified the six songs complained of in this case.[8]

At no time has Rivalry's sought or obtained a licensing agreement from BMI.[9] BMI sent sixteen letters via FEDEX or First Class mail to Rivalry's warning of the infringement and advising of licensing options.[10]  Because Rivalry's failed to respond to its letters, BMI dispatched investigator Clay to the Establishment. Moreover, BMI's licensing personnel telephoned Rivalry's on twenty-eight occasions attempting to warn Rivalry's of the infringement.[11]  Rivalry's failed to respond to all of BMI's communications. Thus, on January 28, 2013, Plaintiffs filed this Complaint against

[4] *Id.* at ¶ 16.
[5] *Id*. at ¶ 19.
[6] Exhibit A [Doc. 9-3].
[7] *Id.*
[8] *Id.*
[9] Stevens Declaration ¶ 9 [Doc. 9-2]
[10] Exhibit B [Doc. 9-4].
[11] Stevens Declaration ¶ 8 [Doc. 9-2]

Rivalry's and its member Nicholas E. Smith, alleging six counts of willful copyright infringement in violation of 17 U.S.C. § 101.  On February 19, 2013, Defendants were served with the Summons and Complaint.  As of the date of this Order, neither Defendant has answered or otherwise acknowledged the pendency of this suit. Plaintiffs received an entry of default on March 21, 2013, and on April 11, 2013, Plaintiffs filed the present Motion for Default Judgment [Doc 9].

DISCUSSION

**A.     Default Judgment Standard**

Prior to obtaining a default judgment, the party seeking judgment must first obtain an entry of default.[12]  Plaintiff has satisfied this requirement.  After entry of default, Plaintiff is required to seek default judgment from the Court.[13]

The mere entry of default by the Clerk does not in itself warrant the entry of default judgment by the Court.[14]  Rather, the Court must find that there is a "sufficient basis in the pleadings for the judgment to be entered."[15]  The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.[16]  The Clerk's entry of default causes all well-pleaded allegations of facts to be deemed admitted.[17]  The Court must accept these facts as true and determine whether they state a claim upon

---

[12] *See* Fed. R. Civ. P. 55(a).
[13] Fed. R. Civ. P. 55(b)(2) ("[T]he party entitled to a judgment by default shall apply to the court therefor.").
[14] *See Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).
[15] *Id.*
[16] *Id.*
[17] *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987).

4

which relief may be granted.[18]  In considering any default judgment, the Court must examine (1) jurisdiction, (2) liability, and (3) damages.[19]  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  The remaining considerations, liability and damages, are discussed below.

**B.      Liability under 17 U.S.C. § 101**

In an action alleging copyright infringement under 17 U.S.C. § 101 for public performance of musical compositions, a plaintiff must prove (1) that the plaintiff originally authored or composed the work, (2) that the plaintiff complied with copyright formalities under Title 17 of the United States Code, (3) that the plaintiff is the proprietor of the compositions in the action, (4) that the defendant publicly performed the composition, and (5) that the defendant did not have a license from or permission by the plaintiff or his representative to perform the composition.[20]  Proof of copyright registration is sufficient to prove the first three elements.[21]  The fourth element, public performance, may be proved by the affidavit of an investigator.[22]

Here, the facts alleged in Plaintiffs' Complaint establish Defendants' liability under 17 U.S.C. § 101. Plaintiffs submitted proof of copyright registration, thereby establishing the first three elements.  Investigator Clay's affidavit and report that he

---

[18] *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370, n.41 (11th Cir. 1987) (citing *Nishimatsu*, 515 F.2d at 1206).
[19] *See Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353 (S.D. Ga. 2004).
[20] *E Beats Music v. Andrews*, 433 F. Supp. 2d 1322, 1325 (M.D. Ga. 2006) (citations omitted).
[21] *See id.*
[22] *Id.*

recorded the public performance of the music compositions inside the Establishment satisfies the fourth element.   Finally, the facts in the Complaint establish that Defendants failed to procure a license or permission from Plaintiffs to perform the compositions.   Thus, the Complaint and the evidence presented to the Court establish that Defendants infringed on Plaintiffs' copyrighted works by publicly performing six musical compositions without a license, in violation of 17 U.S.C. § 101.   Therefore, Plaintiffs are entitled to default judgment.

## C.      Damages

Having concluded that Plaintiffs are entitled to default judgment, the Court must determine the appropriate relief.

### I.   *Injunctive Relief*

First, Plaintiffs seek a permanent injunction against Defendants from any further copyright infringement. Under 17 U.S.C. § 502(a), a court may grant a temporary or permanent injunction it deems reasonable under the circumstances.   Past infringement and substantial likelihood of future infringement normally entitle the holder of a copyright to a permanent injunction against the infringer.[23]

The Court finds a permanent injunction to be appropriate in this case.   Plaintiffs have established both Defendants' past infringement and the likelihood of future

---

[23] *Pacific and Southern Company, Inc. v. Duncan*, 744 F.2d 1490, 1499 (11th Cir. 1984).

infringement through Defendants' clear pattern of disregard for BMI's licensing scheme. Defendants not only failed to seek or obtain a licensing agreement, but also continued to publicly perform or consent to the performance of copyrighted compositions despite receiving sixteen letters and twenty-eight phone calls from BMI warning Defendants of their infringement. Because of Defendants' persistence in violating the United States Copyright laws even after being warned of the possibility of liability, this Court finds Defendants are likely to continue to infringe on Plaintiffs' copyrights. Therefore, Defendants are permanently enjoined and restrained from publicly performing any and all musical compositions in the BMI repertory and from allowing or causing such compositions to be performed publicly at any establishment Defendants control or operate.

## II.   *Statutory Damages*

Second, Plaintiffs seek statutory damages pursuant to 17 U.S.C. § 504(c)(1). Under this section, plaintiffs may elect to recover statutory damages rather than actual damages and profits. "With respect to any one work, for which any one infringer is liable individually," such damages are limited to not less than $750 and not more than $30,000, "as the court considers just."[24]   Furthermore, if the infringement was made

---

[24] 17 U.S.C. § 504(c)(1).

willfully, the court may increase the statutory damages to not more than $150,000.[25]

In determining the amount of statutory damages to be awarded, a court may consider (1) what the defendant saved and reaped from the infringement; (2) what revenue the plaintiff lost as a result of the defendant's infringement; and (3) whether the defendant made the infringement willfully, knowingly, or merely innocently.[26]   A court may also consider whether the award of statutory damages will serve as a deterrent to future wrongful conduct.   As the Supreme Court stated in *F.W. Woolworth Co. v. Contemporary Arts, Inc.*,

> [A] rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes. Even for uninjurious and unprofitable invasions of copyright the court may, if it deems it just, impose a liability within statutory limits to sanction and vindicate the statutory policy.[27]

Thus, in order to deter future infringements, a court can impose sanctions higher than both the statutory minimum and what the defendant would have paid in a fairly negotiated contract.   If a defendant were required to pay the same amount in damages

---

[25] 17 U.S.C. § 504(c)(2).
[26] *Morganactive Songs Inc. v. Padgett*, Case No. 5:04-CV-145 (CAR), 2006 WL 2882521, * 3 (M.D. Ga. August 3, 2006) (citation omitted).
[27] 344 U.S. 228 (1952).

that he would have paid for a negotiated bargain, there would be no reason to obey copyright law.[28]  In order to achieve this deterrent effect, courts in the Eleventh Circuit have awarded damages that are higher than both the statutory minimum and what the defendant would have paid for a license.[29]

Here, Defendants authorized the public performance of six musical compositions copyrighted by Plaintiffs without a license, presumably profiting from the performances.  If Defendants had properly obtained a license when first contacted by BMI, they would have incurred licensing fees of $7,280.00. However, Defendants continued to infringe upon Plaintiffs' rights with full knowledge of the infringement. Thus, in keeping with the prior precedent of this Circuit, the Court finds Plaintiffs are entitled to $2,500.00 per infringement, for a total of $15,000.00.  This amount is more than double the amount of the license fees Defendants would have incurred during the relevant time period, which is appropriate in light of both Defendants' willful and intentional infringements and the need to deter future conduct.

III.  _Attorneys' Fees and Costs_

Finally, Plaintiffs seek an award of reasonable attorneys' fees and other litigation costs in accordance with 17 U.S.C. § 505.  In any civil action under Title 17 of the United States Code, the court may, in its discretion, award reasonable costs, including

---

[28] _See Montgomery v. Noga_, 168 F.3d 1282, 1296 (11th Cir. 1999).
[29] _See Morganactive Songs_, 2006 WL 2882521 at * 3 (awarding $2,000 for each infringement, totaling $14,000, or more than twice the cost of the license); _Nick-O-Val Music Co v. P.O.S Radio Inc._, 656 F. Supp. 826, 829 (M.D. Fla. 1987) (awarding $2,500 for each of the twenty infringements or more than twice the cost of the license).

attorneys' fees, to the prevailing party.[30]   As part of the costs, attorneys' fees are awarded as a rule, rather than as an exception, and should be awarded routinely.[31]

In determining the appropriate amount of attorneys' fees, the Court must calculate the "lodestar," which is the number of hours reasonably spent working on the case multiplied by a reasonable hourly rate.[32]  The Court may make any adjustments to the lodestar calculation for other considerations not yet factored into the lodestar amount.[33]  The Court notes that "the starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate."[34]  "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."[35]  The Court further notes that, in determining a reasonable hourly rate, the Court "is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."[36]

Plaintiffs seek $5,513.57 in attorney's fees and costs.   Plaintiffs submitted a

---

[30] 17 U.S.C. § 505; *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).
[31] *E Beats Music*, 433 F. Supp. 2d at 1327 (citations and quotations omitted).
[32] *Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000).
[33] *Id.*
[34] *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).
[35] *Id.*
[36] *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Norman*, 836 F.2d at 1299).

Declaration [Doc. 9-7] and invoices [Doc. 9-8] from their attorney, Ryan Pumpian, seeking fees for the following legal services: Joellen Bringardner, 2.8 paralegal hours at a rate of $235 per hour; Ryan Pumpian, 1.7 attorney hours at a partner rate of $485 per hour, and; James Gibson, 3.8 attorney hours at an associate rate of $370 per hour. In sum, Plaintiffs seek $5,513.57 for 8.3 total hours of legal services and an additional $30.47 in fees and expenses.[37]  The Court finds 8.3  hours of legal services spent on this case to be reasonable; however, the hourly rates are not.

A reasonable hourly rate "is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation."[38]  In general the relevant legal community is the place where the case is filed.[39]  Plaintiff filed this case in Macon, Georgia, and the events giving rise to this litigation occurred in Macon.  Thus, the Court finds that Macon is the appropriate legal community for the purpose of determining reasonably hourly rates.

The Court may use its discretion and expertise to determine the appropriate hourly rate.  Plaintiffs have proposed rates of $485 per hour for Ryan Pumpian's (partner) time, $370.00 per hour for James Gibson's (associate) time, and $235 per hour

---

[37] Plaintiff's invoice #10186464 itemizes 3.2 total hours of legal services billed and $3.50 in expenses. The total charges on this invoice inexplicably amount to $3,206.03. No itemization exists to explain the disparity between the accurate total for 3.2 billable hours and $3.50 in expenses, and the amount actually documented as total charges on the invoice. Thus, the Court did not consider the ambiguous total on this invoice, and considered only the hours of legal services and expenses in calculating the award.

[38] *Norman*, 836 F.2d at 1299.

[39] *See Cullens v. Ga. Dep't of Transp.*, 29 F.d 1489, 1494 (11th Cir. 1994).

for Joellen Bringardner's (paralegal) time. However, based on careful consideration of Plaintiff's Motion and the Court's own expertise, judgment, and research into prevailing market rates for attorneys in the Macon area, the Court finds that attorney Ryan Pumpian is entitled to $225.00 per hour; James Gibson is entitled to $150.00 per hour; and Joellen Bringardner is entitled to $75.00 per hour.  The Court finds no other rate adjustments necessary.

For the foregoing reasons, the Court finds that Plaintiffs are entitled to an award of $1,192.97 in attorneys' fees and costs for 8.3 hours of legal services as calculated in the Appendix to this Order.[40]

## CONCLUSION

For the foregoing reasons, the Court **HEREBY ORDERS** the Clerk of Court to enter default judgment in favor of **PLAINTIFFS** against Defendants.  The judgment shall provide that Defendants are **PERMANENTLY ENJOINED AND RESTRAINED** from performing any and all copyrighted musical compositions in the BMI Repertoire and from causing such compositions to be performed at any establishment owned, operated, or controlled by Defendants.  In addition, the Court **AWARDS** Plaintiffs $15,000.00 in statutory damages and $1,192.97 in attorneys' fees and expenses.

---

[40] *See Coastal Fuels Mktg., Inc. v. Fla. Express Shipping Co.*, 207 F.3d 1247, 1252 (11th Cir. 2000) (stating that court granting award of attorneys' fees should provide a summary table of how it arrived at calculation awarded).

**SO ORDERED** this 2nd day of July, 2013

<u>S/  C. Ashley Royal</u>
C. ASHLEY ROYAL
United States District Judge

SSH/DMW

## APPENDIX

**<u>Calculation of Attorney Fees</u>**

<u>Ryan Pumpian</u>

|  |  |
|---|---|
| Reasonable Hours | 1.7 |
| Reasonable Rate | $225.00 |
| Total Attorney Fees | $382.50 |

<u>James Gibson</u>

|  |  |
|---|---|
| Reasonable Hours | 3.8 |
| Reasonable Rate | $150.00 |
| Total Attorney Fees | $570.00 |

<u>Joellen Bringardner</u>

|  |  |
|---|---|
| Reasonable Hours | 2.8 |
| Reasonable Rate | $75.00 |
| Total Paralegal Fees | $210.00 |

<u>Additional Expenses & Fees</u>             $30.47


Total Fees Awarded:                    $1,192.97